# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2014-0811, <u>State of New Hampshire v. Jean Mars</u>, the court on May 13, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Jean Mars, appeals his conviction, following a jury trial in Superior Court (<u>Nicolosi</u>, J.), on charges of sale of a controlled drug. <u>See</u> RSA 318-B:2, I, :26 (Supp. 2015). He argues that the trial court erred by instructing the jury that it "may also find that a sale occurred if the Defendant offered to sell or give control of drugs to another person but, in fact, no drugs were actually given or sold."

"The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." <u>State v. Etienne</u>, 163 N.H. 57, 70 (2011) (quotation omitted). We evaluate claims of error in a jury charge by interpreting the instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence presented at trial. <u>Id</u>. "We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case." <u>Id</u>. (quotation omitted). The scope and wording of a jury instruction is within the trial court's sound discretion, and we will uphold the trial court's ruling on such a matter unless the defendant demonstrates that it was clearly untenable or unreasonable to the prejudice of his case. <u>Id</u>.

The indictments in this case alleged that, on three separate occasions in 2013, the defendant sold a quantity of cocaine to an individual working with the Manchester Police Department (informant). The evidence establishes that for each of the charged purchases, the informant first contacted the defendant by telephone or text message to arrange the transaction, then brought a quantity of cash supplied by the police to a residence in which the defendant resided, and eventually left the defendant's residence after a period of time without the cash and with a quantity of cocaine. The evidence further establishes that, at the time of each transaction, other persons were present as well as the defendant. At trial, the defendant did not dispute that the informant purchased cocaine at his residence at the time of each transaction, but suggested that the informant had acquired it from someone else who had been present.

In its charge to the jury, after instructing the jury as to the elements of the crime of sale of a controlled drug, the trial court gave the following instruction as to the meaning of "sale":

> The word sale in the definition means to barter, exchange, gift or make an offer to make any of these kinds of transactions. Even if the Defendant was acting as a go-between or agent, you may find that a sale occurred.
>
> The State does not have to prove that the Defendant made a profit. You may also find that a sale occurred if the Defendant offered to sell or give control of drugs to another person, but, in fact, no drugs were actually given or sold.

See RSA 318-B:1, XXX (Supp. 2015) (defining "sale"). The defendant called into question the final sentence of this instruction (challenged language) on the basis that it was "referencing an attempt." The trial court responded, "That's the definition of sale in the statute," to which the defendant replied, "I know it's in there. . . . [,] [i]t's just the last part, actually given or sold, I just think is confusing." The trial court then suggested, and the defendant agreed, that the challenged language "really doesn't apply in this case." The State responded that, because the defendant was asserting that someone other than the defendant had sold the drugs, and because there was evidence from which the jury could find that the defendant arranged for the transactions to occur, the challenged language applied. The trial court then stated that it would "leave [the instruction] as is," to which the defendant replied, "Thank you, Judge."

On appeal, the defendant argues that the trial court erred by including the challenged language because: (1) the challenged language is not included in RSA 318-B:1, XXX; (2) the challenged language introduces confusion by circularly defining "sale" through use of the terms "sell" and "sold"; (3) the term "sale" is not used in RSA 318-B:2, I; and (4) by disputing that he was the one who had sold the cocaine, the defendant did not introduce a defense that justified the instruction. According to the defendant, the challenged language allowed the jury to convict him merely upon a "finding that [he] did some act while knowing that cocaine was being sold to" the informant. The State counters that none of these arguments is preserved, and that the challenged language is consistent with the statute and the evidence introduced at trial.

We agree with the State that the defendant's arguments are not preserved. Although the defendant, in his reply brief, distinguishes between claims or issues, which he agrees must be raised in the trial court, and arguments in support of claims or issues, which he contends need not be raised, we have held that within the context of jury instructions, a litigant must do more than "debate possible instructions with the trial court," but must "actually make a specific objection to the court's jury instructions." State v.

2

Nightingale, 160 N.H. 569, 577 (2010) (emphasis added).  The purpose of this requirement is to afford the trial court an opportunity to correct an error it may have made; it is a "particularly fitting [requirement] when an alleged error involves a jury instruction."  Id.  Here, the defendant's arguments at trial were limited to his assertions that the challenged language referenced an attempt, that "actually given or sold" was confusing, and that the challenged language did not apply in this case.  He did not articulate with specificity the same arguments that he is now presenting on appeal, including his arguments why "actually given or sold" was confusing.  Thus, the trial court was effectively deprived of an opportunity to correct the alleged errors.  See State v. Mouser, 168 N.H. 19, 26-28 (2015) (rejecting argument that the defendant was not required to raise specific arguments in support of motion to suppress to preserve them on appeal because, by raising different argument on appeal than the argument presented to the trial court, the trial court was deprived of an opportunity to correct its alleged error).

Even if the defendant had preserved his arguments, however, we also conclude that the challenged language accurately and adequately explained to the jury the rules of law that applied in this case.  Etienne, 163 N.H. at 70.  RSA 318-B:2, I, makes it unlawful "for any person to . . . sell . . . any controlled drug . . . except as authorized in this chapter."  "Sale" is defined to mean "barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as a principal, proprietor, agent, servant, or employee."  RSA 318-B:1, XXX.

In State v. Stone, 114 N.H. 114 (1974), we affirmed the defendant's conviction for sale of a controlled drug under RSA 318-B:2 (Supp. 1973), over his arguments that there was no evidence that he had profited from the sale, and that he had merely acted as the buyer's agent.  See Stone, 114 N.H. at 116-17.  In rejecting these arguments, we reasoned that the definition of "sale" in RSA 318-B:1, XXX (Supp. 1973), "includes a 'gift or offer,'" "applies to any agent involved with no restriction that he must be acting for the seller and not the buyer," and does not contain the term "consideration."  Id. at 117.  Thus, we held that "proof that the defendant made no profit or received no other consideration from this transaction, or proof that he was simply a procuring agent for [the undercover police officer who purchased the drugs,] would not prevent the defendant's action from constituting a sale under RSA ch. 318-B (Supp. 1973)."  Id.  We likewise found "no merit in the claim that the use of the word 'sale' by the court in its instructions to the jury instead of the words 'did sell' used in the indictment prejudiced the defendant."  Id.

The relevant language of RSA 318-B:2, I (Supp. 2015) and RSA 318-B:1, XXX (Supp. 2015), is not materially different from the language of the statute that was in effect in Stone.  See Stone, 114 N.H. at 115-16 (quoting RSA 318-B:1, XXX and :2 (Supp. 1973)).  Accordingly, the trial court properly instructed the jury as to the meaning of "sale" under RSA chapter 318-B for purposes of

3

determining whether the defendant had sold a controlled drug to another. Moreover, the challenged language is consistent both with the express language of RSA 318-B:1, XXX, and with our construction of it in Stone. Finally, the challenged language was consistent with the evidence at trial from which the jury could have found that the defendant had arranged for the transactions at issue to occur. Viewing the challenged language within the context of the instruction as a whole, as a reasonable juror would have understood it, and in light of all the evidence presented at trial, we conclude that the jury instructions adequately and accurately explained the elements of sale of a controlled drug under RSA 318-B:2, I, and that the trial court's decision to include the challenged language was neither clearly untenable nor unreasonable to the prejudice of the defendant's case. Etienne, 163 N.H. at 70.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

4